IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO


IN THE MATTER OF                   :

BEATRIZ READY MIX, INC.,           :        CASE NO. 08-04457(SEK)

    DEBTOR IN POSSESSION            :        CHAPTER 11
------------------------------------

## OPINION AND ORDER

Soon after Beatriz Ready Mix, Inc. sought bankruptcy protection, it filed a motion to assume the unexpired lease over the locale where its cement and/or poured concrete manufacturing plant is located. At the same time, it filed a motion to reject the unexpired transportation agreement for hauling the raw materials used in this manufacturing process. The Lessor and the Trucker objected. We held an evidentiary hearing. When Debtor submitted its case, the Opponents asked for a judgment on partial findings under F.R.B.P. 7052 & 9014 and F.R.C.P. 52(c), choosing to submit the matter for resolution based on evidence received at that point.[1]

We grant the motion for judgment on partial findings for reasons that follow.

## Factual Background

We summarize the agreed facts, adding pertinent ones elicited from credible testimony of the only witness, Mr. Antonio Joglar, and



---

[1] "When a party has finished presenting the evidence and that evidence is deemed by the trier insufficient the party's position, the court need not waste time, but, rather, may call a halt to the proceedings and enter judgment accordingly." *Morales Feliciano v. Rullán*, 378 F.3d, 42, 59 (1st Cir. 2004).

admitted documents.[2]

Back in 1999, José L. Torres, either personally or through one of his closely held corporations[3], (collectively referred to as the "Seller"), decided to sell his concrete manufacturing business to the Debtor, (the"Buyer"). Mr. Joglar, an educated and experienced businessman who at the time also operated two other similar concrete manufacturing plants, negotiated the terms of the deal for the Debtor, assisted by counsel. The terms and conditions of the sale were drafted and executed on the same day, before the same Notary, in three separate documents identified as: (1) the Asset Purchase Agreement, (2) the Transportation Agreement, and (3) the Lease Agreement. As might be expected, each document referred to one of the transaction's components, contemplated different considerations, and was executed by three distinct entities on behalf of the Seller. Each document also states the parties intended that the three documents be considered complimentary and interrelated agreements, or components of the one single transaction, that is, the sale of the business.[4] The components also contain cross default clauses.[5] At closing, the Buyer paid $2.5 million, the price set for the purchase of certain assets and good will. The lease and trucking components would produce a stream of



---

[2] Mr. Joglar was Debtor's President at the time of sale. His son now runs the business.

[3] He owns the leasehold together with his wife, and is the principal, if not sole stockholder of, Concretera Beatriz Inc. and José L. Ramón Trucking, Inc.

[4] See the attached exhibit which forms part of this opinion.

[5] *Ibid.*

3

payments over the next twenty years, now consisting of a $3,000 monthly lease installment and trucking fees set by the Comisión de Servicio Público, a government entity that regulates the hauling in Puerto Rico.

Eight and a half years later, Debtor was in deep financial trouble, owing over $400,000 for hauling fees to the Seller. Stating that it could not satisfy these charges, Beatriz Ready Mix, Inc. filed this Chapter 11 petition on July 10, 2008, and remains a Debtor in possession. During August, Debtor filed the motion to assume the lease stating it did not owe any arrears, and required the site to carry on with its operations during the reorganization process. This was followed by Debtor's motion rejecting the transportation agreement, as it was unable to satisfy the arrears. Debtor also asserted the materials could be hauled "by someone else who has a license", identified by Mr. Joglar as the truckers providing this service to their other cement manufacturing plants. The Buyer objected and we held the mentioned hearing culminating with the request for entry of judgment under FRCP 7052.

### Discussion



We have jurisdiction to resolve the controversies at hand pursuant to 11 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(1).

The "Seller" objects to the assumption and the rejection. Relying on contractual clauses, it argues these show the parties intended that the three documents be considered as components of one, interdependent transaction or unified deal, that can not be severed for purposes of assumption and rejection allowed by 11 U.S.C. § 365.

4

The "Buyer" claims the contracts are not economically interdependent, but depict three separate and severable obligations. Furthermore, contractual clauses seeking to tie these contracts into a single unified obligation may be overridden under applicable nonbankruptcy law, or by the paramount equitable powers given to a bankruptcy court, paving the way for the assumption and concomitant rejection sought by the reorganizing Debtor.

Both parties agree that the Parole Evidence rule applies here.

A. Applicable nonbankruptcy law and the Parole Evidence Rule.

The parties chose to have controversies concerning the interpretation of documents evidencing the purchase solved according to the laws of the Commonwealth of Puerto Rico.[6] Article 1233 of our Civil Code provides:

> If the terms of the contract are clear and leave no doubt as to the intention of the contracting parties, the literal sense of the stipulations shall be observed.
>
> If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail.

31 Laws of P.R. Ann. §3471 (2000).

Our courts have stated that if the provisions of the contract are clear and unambiguous, its literal terms must be enforced. The courts must then "refrain from further speculation as to their alleged contractual intentions." *In re N500L Cases*, 517 F. Supp. 816, 818 (D.P.R. 1981); *Unión de Médicos del CFSE*, 2007 TSPR 35 (2007); *Luce & Co. v. Junta de Relaciones de Trabajo*, 86 D.P.R. 425 (1962). "The only



---

[6] See the exhibit included as part of this opinion and *Puerto Rico v. Residential Partners, S.E., et al.*, 350 F. Supp. 334, 338 (DPR 2004).

terms that can considered to be clear are those which in themselves are sufficiently lucid to be understood in one sense alone, without leaving any room for doubt, controversies or differences of interpretation, and without requiring for their understanding any reasoning or illustration susceptible to change." *Sucesión Ramírez v. Tribunal*, 81 P.R.R. 347 (1959). As our Supreme Court states, "the strict mandate of ... art. 1233 obliges us to abide by the literal meaning of the terms of the contract when ... they leave no doubt as to the intention of the contracting parties." *Marina Industrial v. Brown Boveri, Corp.*, 14 P.R. Offic. Trans. 86, 98 (1983).

If the Parole Evidence Rule applies to a controversy involving the interpretation of a clear and unambiguous contractual clause, then that clause cannot be explained or contradicted by evidence extrinsic to its contents. See *Mercado-García v. Ponce Federal Bank*, 979 F.2d 890, 894 (1st Cir. 1992) and Rule 69(B), 32 Laws of P.R. Ann. App. IV R 69(b). Courts have also held that when the parties enter into an integrated agreement (meaning the agreement specifically states that all terms and conditions constituting the final intention of the parties have been included), the document is deemed complete and no extrinsic evidence may be considered. *Nike Int'l., Ltd. v. Athletic Sales, Inc.*, 689 F. Supp. 1234, 1244 (D.C.P. 1988); *Borschow Hospital & Medical Supplies, Inc. v. César Castillo, Inc.*, 882 F. Supp. 236, 240 (D.P.R. 1995).

The Seller argues we can considering only the terms of the contracts when solving the parties' intentions on severability of the deal's three components. These terms show the parties intended that



6

the three documents be considered as portions of one unified obligation that must be assumed *cum onere*. Since the documents' integration clauses and the clauses concerning the parties's intention are clear and unambiguous, the Buyer cannot introduce extrinsic evidence of intent to refute these clauses.

The Buyer claims the three documents "do not make reference to the economic interdependence among them". The agreed purchase price for the assets was paid in full at closing. The consideration contained in the two other documents are still being paid. These differences, the Buyer claims, are sufficient to create an ambiguity as to the intention of the parties. The Buyer also argues the documents were drafted by Counsel for the Seller. Mr Joglar did not review these before execution. Consequently, these two circumstances placed the Buyer at a disadvantage, allowing us to construe any ambiguity against the Seller.

We find the words used in the tie-in clauses in all three documents are clear. The contractual language expressing the parties' intent is not murky, or obscure. These expressions undoubtedly state the parties intended that the three documents complement each other, depicting the components of one single business transaction.

It is improbable that an experienced, educated businessman, who owned an operated two similar concrete manufacturing plants, and who was represented by counsel, would sign documents involving millions of dollars without first contributing his views, reading the final drafts and discussing the terms with his attorney. Therefore, we reject the Buyer's version of this event.



7

As to the Buyer's argument concerning the lack of economic interdependence of the three components, it is just as likely for us to view the sale's price as consisting of a down payment furnished by the $2.5 million for the value of the assets and good will component, followed by a stream of payment over the next twenty years, provided by the lease installments and hauling fees components.

Hence, we find the preponderance of the credible and admissible evidence here shows the tie-in clauses in the three documents demonstrate the parties' true and unequivocal intent once they reached a meeting of the minds. These tie-in clauses clearly show the three contracts express the true intent of the parties: that is, the documents are but components of a single, interdependent, unified business transaction, and that the parties never intended us to consider the documents as three individual, separate, self-standing and severable contracts.

B. Tie-in and cross default clauses under Federal Bankruptcy law.

"Leasehold interests [and executory contracts] are governed in bankruptcy by section 365 of the Code, which provides, in pertinent part, that the trustee, subject to court approval, may assume or reject any executory contract or unexpired lease of the debtor." *Matter of Village Rathskeller, Inc.*, 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992).[7] "It is axiomatic that an executory contract generally must be assumed *cum onere*. [cit. omitted] A debtor cannot simply retain the favorable and excise the burdensome provisions of an



---

[7] Although this section refers to the duties of a trustee, a debtor in possession may exercise the rights of a trustee serving in a chapter 11 case, pursuant to 11 U.S.C. § 1107(a).

8

agreement. [cit. omitted] Only certain contractual provisions, such as those expressly rendered unenforceable by the Bankruptcy Code, *see, e.g.,* 11 U.S.C. § 365(e)(1), or those that are designed to thwart bankruptcy policies, are vulnerable. [cit. omitted]. In limited circumstances, however, a court may exercise equitable discretion to refuse to enforce a provision where 'there is no substantial economic detriment to the [non-debtor counterparty] shown and where enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets.'" (cit. omitted) *In re Kopel,* 232 B.R. 57, 63-64 (Bankr. E.D.N.Y. 1999). "However expansive the bankruptcy court's power may be to protect the property interests of debtors-in-possession, it does not extend to enlarging the rights of a debtor under a contract or rewriting its terms." (cit. omitted) *In re EES Lambert Associates,* 62 B.R. 328, 336 (Bankr.N.D.Ill. 1986). "... [T]he judge must look at the totality of the circumstances in order to do equity." (cit. omitted) *Village Rathskeller,* 147 B. R. at 472.

Both parties acknowledge our decision involves a two-step analysis. First, we determine whether the tie-in clauses may be excised, and then we address the enforcement of the cross-default clauses.



As we understand Buyer's view, these tie-in clauses thwart its reorganization, as the hauling component has become economically burdensome. The cost of maintaining the leasehold is feasible and retaining this asset is essential to the reorganization process. Our equitable powers under bankruptcy law allow us to excise the tie-in clauses in the lease and trucking documents, as these separate

9

contracts are not economically interdependent and are therefore, severable.

Mr. Joglar testified that the Debtor is unable to cure the trucking arrears. However, at this juncture, there is no evidence to substantiate this bald statement. There is also no evidence that shows these related truckers can indeed haul the raw materials at affordable rates facilitating Debtor's reorganization.

Next, we reject Debtor's view concerning the economic interdependency of the contractual components. As we have explained, the sales price can be viewed as a $2.5 million immediate payment, and a stream of payments produced by leasehold installments and hauling revenues over the next twenty years.

Furthermore, most of the cases cited by the Buyer involve cross-default clauses in franchises with multiple lease contracts, where a Debtor seeks to reject locales that are burdensome, and retain those that are productive. The facts before us are distinguishable. We are not considering multiple leases with tie-in and cross-default clauses needed to operate a business under a franchise agreement. Debtor here cannot manufacture and sell its cement without the raw materials, whereas a franchisee in bankruptcy can reorganize without leasing a particular locale.

Nor are we persuaded to waive the strict compliance with the tie-in clauses by the Buyer's reliance on *In re UAL Corporation*, 346 B.R. 456 (Bankr. N.D. Ill., 2006). There, the bankruptcy court was asked to find a cross-default clause conditioning the assumption of the unexpired airport terminal lease and use agreement, to debtor's

10

performance under separate agreements to make payments of certain bonds, unenforceable. The court reasoned there were no economic considerations linking the unexpired lease and use agreement to the separate bond payment agreements. Therefore, there was no basis for enforcing the cross-default clause. *Id*. 471. The transaction at hand consists of the sale of an entire business.  The nature of this transaction is quite different from the transactions before the bankruptcy court in Illinois. Unlike *UAL*, *supra*, here, we are faced with excising two express links in the deal's components: the tie-in clauses and the cross-default clauses. The three documents or components of the purchase before us show the deal involved all the integral parts of the concrete making business. In *UAL*, *supra*, the Court considered the lease and payment agreements of bonds. While the payment agreements facilitated the City of Chicago's obligation to pay for terminal improvements at O'Hare Airport used by the reorganizing airline, these agreements were not integral parts of UAL's business.

In synthesis, we find that consistent with the Buyer's intention of acquiring the entire business, it obtained the business' three interdependent components: its assets and good will, the leasehold and certain other equipment, and the means for hauling the needed raw materials. These are the integral parts of the sale's price which the Buyer expects to receive. Consequently, all these circumstances show the deal's components are not free-standing agreements, but portions of a single integrated transaction that Buyer/Debtor must assume *cum onere*.

Because Debtor has not met its initial burden of showing by a

11

preponderance of the admissible evidence that the components of the deal are severable, we shall enter judgment by separate document denying its motions to assume and reject the components in question under FRBP 7052.

**SO ORDERED**, in San Juan, Puerto Rico, on February 3, 2009.

SARA DE JESUS
U.S. Bankruptcy Judge

| ASSET PURCHASE AGREEMENT EXHIBIT 1 | TRANSPORTATION AND USE OF CONCRETE MIXER TRUCKS AGREEMENT EXHIBIT 2 | LEASE AGREEMENT EXHIBIT 3 |
|---|---|---|
| Page 2<br>WHEREAS: The appearing parties also, as a basic part of the instant agreement, have other complementary businesses agreed to which are interrelated, be it directly or through other persons or corporate entities which are under their control, to wit: the leasing of the lands where the Concrete Mixer is located; the transportation of the cement and aggregates needed to manufacture mixed concrete and the exclusive use of the concrete mixer trucks; therefore, the intent of the parties for this contract is that it be subject and conditioned to the execution and compliance of the complementary agreements described herein, as stated below within this contract (from now on known as the "Complementary [sic] Contracts"). | Page 2<br>WHEREAS: The appearing parties also, as a basic part of the instant agreement, have other complementary businesses agreed to which are interrelated, be it directly or through other persons or corporate entities which are under their control or under the control of their shareholders, to wit: the purchase of certain assets related to the Concrete Mixer and the lease of the lands where the Concrete Mixer is located; therefore, it is the intent of the parties that this agreement be subject and conditioned to the execution and compliance of the complementary agreements described herein, as stated below within this contract. | |

1

Case:08-04457-SEK11  Doc#:75  Filed:02/03/09  Entered:02/03/09 15:39:41  Desc: Main Document  Page 13 of 16

INTENT OF THE PARTIES THAT THE AGREEMENTS ARE INTERRELATED
AND CROSS-DEFAULT CLAUSE

| ASSET PURCHASE AGREEMENT EXHIBIT 1 | TRANSPORTATION AND USE OF CONCRETE MIXER TRUCKS AGREEMENT EXHIBIT 2 | LEASE AGREEMENT EXHIBIT 3 |
| --- | --- | --- |
| Page 15<br>16. Complementary Agreements: The rest of the terms and conditions of the purchase object of this present agreement are reflected in the complementary agreements which are part of this transaction, to wit:<br>    a. Lease Agreement executed this same date between the Buyer and Mr. Jose Luis Ramon Santos and Margarita Mejias Leon.<br>    b. Transport and Use of Concrete Mixer Trucks Agreement, executed on this same date between the Buyer and Jose Luis Ramon Trucking, Inc.<br>    Both appearing represent and guarantee to each other that the intention of both parties is that the negotiation and the fulfillment of the aforementioned Complementary Agreements and this contract for purchase of assets are intimately interrelated and that any breach on the part of the Buyer concerning the terms and provisions of any of the Complementary Agreements shall be understood and interpreted, for all pertinent legal purposes, as breach of this contract. | Page 9<br>12. The rest of the terms and conditions of this agreement are reflected in the complementary agreements which form part of this transaction, to wit:<br>    a. Lease Agreement entered into on this same date between Beatriz Ready Mix and Mr. Jose Luis Ramon Santos and Ms. Margarita Mejias Leon.<br>    b. Asset Purchase Agreement, entered into on this same date between Beatriz Ready Mix and Concretera Beatriz, Inc.<br>    Both appearing parties represent and guarantee to each other that the intent of both parties is that the negotiation and the fulfillment of the aforementioned Complementary Agreements and this contract for purchase of assets are intimately interrelated and that any breach on the part of Beatriz Ready Mix concerning the terms and provisions of any of the Complementary Agreements shall be understood and interpreted, for all pertinent legal purposes, as breach of this contract. | Page 32<br>TWENTY FOUR (24): COMPLEMENTARY CONTRACTS:<br>a) The other terms and conditions of the lease agreement which is the object of this document, are reflected in the complementary contracts which form part of this transaction, to wit:<br>    i) Asset Purchase Agreement granted on this same date and entered into between the Lease Holder and Concretera Beatriz, Incorporated.<br>    ii) Exclusive Contract for Transportation of Aggregates granted on this same date between Lease Holder and Jose Luis Ramon Trucking, Inc.<br>    iii) Preferent Lease Agreement for Concrete Mixer Trucks, granted on this same date between the Lease Holder and Jose Luis Ramon Trucking, Inc.<br>b) Both appearing parties are represented and guarantee to each other that the intention of both parties is that the negotiation and compliance of the aforementioned Complementary Contracts and this lease agreement are intimately related and that any non-compliance on the part of the Lease Holder concerning the terms and provisions of any of the Complementary Contracts shall be understood and shall be interpreted, for all pertinent legal purposes, as a breach of this lease agreement. |

Case:08-04457-SEK11  Doc#:75  Filed:02/03/09  Entered:02/03/09 15:39:41  Desc: Main
Document    Page 14 of 16

CROSS-DEFAULT CLAUSE

| ASSET PURCHASE AGREEMENT EXHIBIT 1 | TRANSPORTATION AND USE OF CONCRETE MIXER TRUCKS AGREEMENT EXHIBIT 2 | LEASE AGREEMENT EXHIBIT 3 |
| --- | --- | --- |
| Page 10, Paragraph 8 (v) That it is obligated to comply fully with the Complementary Agreements and that any breach of the latter shall be understood to mean a breach of this present contract. | | Page 17, Paragraph 12 Twelve(12): Termination due to Breach of Contract a) This contract shall be able to be declared terminated by the Tenant and shall proceed to immediate resolution, in all the following cases: iv) for non-compliance with the Complimentary Contracts as defined below in this contract. |

3

ENTIRETY OF THE AGREEMENT CLAUSE

| ASSET PURCHASE AGREEMENT EXHIBIT 1 | TRANSPORTATION AND USE OF CONCRETE MIXER TRUCKS AGREEMENT EXHIBIT 2 | LEASE AGREEMENT EXHIBIT 3 |
|---|---|---|
| Page 16<br>20. Acuerdo Total: Las partes se aseguran y garantizan entre sí que este acuerdo contiene todos los acuerdos y condiciones relativos a la compra de los Activos. Cualquier acuerdo entre las partes, previo a la firma de este contrato, relacionado con la referida transacción, queda expresamente cancelado y dejado sin efecto, y cualquier modificación o enmienda futura que las partes interesen hacer a este contrato no será válida si la misma no se formaliza por escrito como una enmienda a este contrato.* | Page 10<br>15. The parties represent and guarantee to each other that the present agreement contains all the terms and conditions relative to its objective. Any agreement between the parties entered into before the execution of this contract, related to the aforementioned transaction, is expressly cancelled and left without effect, and any modification or future amendment that the parties may be interested in making to this contract shall not be valid if the same is not formalized in writing as a specific amendment to this agreement. | Page 36<br>THIRTY-TWO(32): ENTIRETY OF THE CONTRACT: The appearing parties insure and guarantee that this Contract contains all the agreements and conditions related to the lease of the Lease Property and the Building that the appearing parties have agreed to. Any agreement previous to the signing of this contract is hereby expressly canceled and without effect; and any future modification or amendment that the parties agree to shall not be valid if the same is not formalized in writing as a specific amendment to this contract. |

*Page 16 of the agreement was omitted from the certified translation, thus we transcribe this clause in Spanish.

4

Case:08-04457-SEK11   Doc#:75   Filed:02/03/09   Entered:02/03/09 15:39:41   Desc: Main
Document   Page 16 of 16

CHOICE OF LAW CLAUSE

| ASSET PURCHASE AGREEMENT EXHIBIT 1 | TRANSPORTATION AND USE OF CONCRETE MIXER TRUCKS AGREEMENT EXHIBIT 2 | LEASE AGREEMENT EXHIBIT 3 |
|---|---|---|
| Page 13<br>11.Applicable Law and Successors<br>This agreement shall be interpreted and shall be governed by the laws of the Commonwealth of Puerto Rico and all the appearing parties submit to the jurisdiction and competency of the Superior Court of Puerto Rico, Court of San Juan, for everything having to do with this agreement. This present agreement shall bind the successors, heirs and transferees on both sides. | Page 8<br>10.This contract shall be interpreted by and governed by the laws of the Commonwealth of Puerto Rico and all the parties appearing hereby submit to the jurisdiction and competence of the Puerto Rico Superior Court, Court of San Juan, for everything related to this agreement. This present agreement shall be binding for the successors, heirs and transferees of both parties. | Page 22<br>FIFTEEN(15): JURISDICTION: The Lease Holder expressly submits to the jurisdiction of the Court of Justice selected by the Tenant should any conflict between the parties arise, by or as a result of this present contract. |

5